INTERURBAN TRANSP. CO., Inc., v. F. STRAUSS & SONS et al.

No. 6154.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Clark & Thompson, of Monroe, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

DREW, Judge.

Plaintiff instituted this suit to recover damages caused to one of its buses by a collision with a truck owned and operated by defendant. For a cause of action, plaintiff alleged:

"Petitioner shows that at about 1:20 P. M., on the said date, its passenger bus was proceeding in a southerly direction on U. S. Highway 165, traveling at about 40 miles per hour. Petitioner shows that as its said passenger bus approached a place on the highway where a small bar and filling station, known as the Pine Bar, is situated, the bus driver observed the defendants' truck and trailer some distance ahead of the car, also traveling in a southerly direction, at which time the said truck and trailer were on the extreme right side of the highway, slowing down and traveling at a very slow speed as if to come to a stop on the right side of the road.

"Petitioner shows that the driver and operator of said truck, one Harold Turner, failed to give any signal of an intention to alter the course of the said truck and from his position apparently intended to stop on the right side of the road.

"Petitioner shows that as the bus approached within 100 yards of the said truck and trailer, the bus driver blew his horn and pulled to the left to indicate his intention to pass the said truck and trailer of the defendant; that he proceeded to pass, blowing his horn several times as he neared the truck, but that when the bus reached a point within about 50 feet of the rear of the truck, defendants' truck driver, without giving any signal or warning whatever, turned the truck and trailer abruptly toward the left, apparently for the purpose of entering a private driveway on his left, thereby blocking and obstructing the path of the bus.

"Petitioner shows that when the defendants' truck driver began the said turn, moving slowly, the bus driver immediately applied his emergency brakes, which were in perfect condition, in an effort to stop, and blew his horn to warn the driver of the truck ahead to bring his truck to a stop and allow the bus to pass. However, petitioner shows that the said truck driver never did stop the movement of the truck, with the result that it completely blocked the path of petitioner's bus, thereby causing the bus to collide with the left side of the truck, due to the fact that the distance was too short for petitioner's bus driver to stop the bus before the collision.

"6. Petitioner shows that the said collision was caused by the gross negligence of the defendants' truck driver in making a left turn across the highway without giving any signal or warning of his intention to do so, and in his failing to hear the horn of the bus and stop his truck in time to avoid the collision."

Plaintiff itemizes its damages as follows:

"Parts, labor, freight & express $ 726.31
10% for supervision, etc......... 72.63
Relief bus from Olla to Alexandria ................... 15.00
Towing from Olla to Alexandria ..................... 15.00
Loss of time for 21 days....... 210.00

Total ..................... $1038.94"

It made party defendant the United Employers Casualty Insurance Company, of Houston, Texas, the alleged public liability insurer of defendant, and prayed for judgment, in solido, against all defendants, including the defendant partnership and each of its members.

Defendant filed exceptions of no cause or right of action, which were not tried below and are not urged here.

The Gulf Insurance Company intervened in the suit alleging it carried a policy of collision insurance on defendant's truck and was therefore vitally interested in the outcome of the suit; that it had paid to defendant $389.36 to cover the damage for which it was liable. It alleged freedom from negligence on the part of defendant and actionable negligence on the part of plaintiff. These allegations are the same as were made by defendant in answer, which will be hereafter stated. It prayed for judgment against plaintiff for the sum it had paid out.

Plaintiff answered the petition of intervention and denied liability and in defense reiterated the allegations made in its petition.

Defendant F. Strauss & Sons and its insurer answered denying the principal allegations of plaintiff's petition and also denying there was any negligence on the part of the driver of its truck. It further answered as follows:

"11. Now further answering, your respondents aver that on February 2, 1939,

Harold Turner was driving an International Trailer Truck of F. Strauss & Sons, turning into a vacant space immediately to the north of the Pine Bar, approximately two miles south of Grayson, Louisiana, in Caldwell Parish, when a bus of the Interurban Transportation Company, Inc., being driven by one of its employees, in the course and scope of its business, in a highly careless and negligent manner with an utter disregard for the safety of others, ran into the left side of the truck of F. Strauss & Sons, as will be more fully set out elsewhere herein.

"12. Your respondents aver that the accident occurred at a point on U. S. Highway 165, approximately two miles south of Grayson; that the highway at this point is an ordinary, black-topped highway which, because of the fact that it has become worn and settled in spots, is very rough, making it extremely dangerous to drive even a small passenger automobile over it at a speed in excess of 30 miles an hours. That the highway is approximately 18 feet in width and extends in approximately a northerly and southerly direction and is straight for a distance of approximately 150 yards, and in a southerly direction for approximately one-fourth mile. That at the time of the accident sued on, the Pine Bar, an ordinary frame building with a shed and filling-station pump, located approximately 8 feet in front of same, were located approximately 10 feet east of the easterly tip of the black-topped portion of the highway.

"13. Your respondents aver that Harold Turner was driving the afore-described truck of F. Strauss & Sons in a southerly direction on the afore-described highway just north of the Pine Bar on his right side of the highway at a very slow and careful rate of speed, preparatory to turning to his left into a vacant clearing of space situated just north of the Pine Bar, on his left. That Turner, before starting to turn to his left, slowed his truck down, looked to his rear view mirror, saw no one approaching, held his left hand out of the window of the cab of his truck and then started to turn. That the cab and front portion of the trailer of his truck had completed the turn to the left and were completely off the black-topped portion of the highway when the bus of the Interurban Transportation Company, Inc., traveling in a southerly direction, at an excessive speed of 70 miles an hour, rounded a curve located approxi-

mately 150 yards north of the point where the accident occurred and, due to its excessive speed, lack of attention being paid to the highway along which he was traveling by the driver of the bus, and utter disregard of the bus driver for the safety of others, ran into the left side of the truck of F. Strauss & Sons, knocking it sideways for approximately 12 feet into the side of a gasoline pump encased in a cement base with such force that it knocked the pump out of its encasement and down on the ground."

In the alternative, it alleged contributory negligence on the part of plaintiff which was the proximate cause of the accident. It also reconvened praying for damages to its truck in the sum of $100, which was the amount deductible from the policy of collision insurance which it carried, and for the loss of use of its truck for one week at $20 per day, or $140.

On these issues the case was tried below and there was judgment in favor of plaintiff and against defendant, F. Strauss & Sons, and its liability insurer, in solido, in the sum of $513.60, with legal interest thereon from judicial demand until paid and all costs. The demands of F. Strauss & Sons in reconvention were rejected and those of the Gulf Insurance Company, intervenor, were also rejected.

Defendants have perfected and are now prosecuting this appeal. Intervenor appears satisfied with the judgment below.

The facts of the case are clearly with plaintiff, as was found by the lower court. A truck, owned and operated by F. Strauss & Sons, was traveling south from Monroe to Alexandria, Louisiana. Plaintiff's bus was proceeding in the same direction on the same highway. When at a point on the highway approximately two miles south of Grayson, Louisiana, and directly in front of the Pine Bar, the collision occurred. Several hundred yards north of the Pine Bar there is a curve in the highway. When the bus negotiated the curve, the driver saw the truck ahead of it on its right side of the road. The bus was traveling faster than the truck and desired to pass. The bus driver sounded the horn on the bus several times and defendant's truck pulled to the right. The bus was driven to the left side of the road preparing to pass the truck when the truck driver suddenly, without warning or signal, turned to the left and across the highway in an attempt to pull into the Pine Bar. At the time the attempt to turn left across the high-

way was made by the truck driver, the bus was too close to be stopped before impacting the truck. The bus driver, in an attempt to avoid the accident, pulled entirely off the highway on its left and struck the truck, driving it into a gasoline pump sitting in front of the Pine Bar and knocking it down.

No citation of authority is necessary to support a finding of negligence on the part of the truck driver, under the above state of facts, and likewise to find the bus driver free of negligence. If there is anything in our law that is well settled it is that a driver of a vehicle, when intending to turn left across the highway, must make sure that the way is clear and that no on-coming car is close enough to be collided with in making the left turn.

The driver of the truck was grossly negligent and his negligence was the proximate cause of the accident.

The question of the amount of damage caused to plaintiff by the collision is more difficult than the question of liability. The lower court awarded damages in the following amounts:

Repairs to the body of the bus.... $337.20
10% overhead on the above item.. 33.72
Mechanics' time in going after the
bus .......................... 7.74
Relief bus ..................... 15.00
Extra bus for towing wreck....... 15.00
Loss of use of bus for 10½ days... 105.00

Total ....................... $513.60

However, it refused to allow plaintiff to recover damages to the motor of the bus.

The repairs to the body of the bus were made necessary by the accident and, although they were made in plaintiff's own repair shop which it operates for that purpose, we are convinced the amount allowed was proved and is the correct amount due for parts and labor in repairing the body of the bus. The 10% on this amount, which was allowed, was to cover the overhead cost of operating the shop, including the superintendent of the body works, machinery, tools, etc., used in making the repairs. This is a fair charge and was correctly allowed.

The mechanics' time in going after the crippled bus was proved and the item properly allowed. The amounts charged for the relief bus and the one to tow in the injured vehicle, which were figured on a scale of so much per mile, and which plain-

tiff has found to be the average cost of operating a bus, were properly allowed.

The next item allowed by the lower court for loss of use of the bus for 10½ days was incorrectly allowed. Plaintiff owned an extra bus which it kept for such emergencies and it was put in service in place of the damaged one. Plaintiff claims that it was a smaller bus, not nearly as nice or comfortable as the regular one, and the superintendent estimates that the business lost on this account was equivalent to the amount allowed by the lower court. It failed to show that any passengers who wished to ride the bus were prevented from doing so because the bus was not large enough or that anyone refused to ride in it because it was not as comfortable as the regular bus which was damaged. In fact, this item of damage is purely speculative and imaginary and there is no proof to sustain it.

The other item for repairs to the motor was disallowed by the lower court and we are of the opinion the judgment is correct in that respect. The record discloses that the damage to the motor was due to over-heating, which was caused by the water leaking out. The driver knew the bus was damaged and only made a cursory examination of it. He telephoned from the Pine Bar to his company's headquarters and requested that a relief bus be sent out. He should not have driven the damaged bus until a thorough examination had been made of it. After talking to headquarters, the driver drove the bus on to Olla. It was hard to steer and became very hot. The driver testified to these facts. When he examined the motor immediately after the accident, he saw that fluid was dripping onto the ground from the motor. When it began to get hot he should have known the cause and stopped driving the bus. It was his duty to minimize the damages as much as possible and when he saw the bus in the condition it was, he failed to minimize the damage, but caused greater damage than had been caused by the collision. The collision did not cause the damage to the motor. It was operating the bus after the collision which caused the damage and defendant is not liable for this item.

We are of the opinion, therefore, that the judgment of the lower court is correct, with the exception of the item of $105 allowed for loss of use of the bus for 10½ days. This item should not have been allowed.

It therefore follows that the judgment of the lower court is amended by reducing

the total amount of award to plaintiff from $513.60 to $408.60, and, as amended, it is affirmed; costs of appeal to be paid by the appellee and all other costs by appellant.