FOURNET, Chief Justice.
The plaintiff, Nye Patterson, a duly qualified voter and property owner of DeRidder, Louisiana, is appealing from a judgment dismissing, on defendant’s exception of no cause of action, his suit attacking the legality of a special election held in that city on August 27, 1957, under a call issued by the City Council on July 8, 1957, as well as the promulgation of the results of that election on August 29, 1957, wherein the property owners purportedly authorized, in sufficient numbers and assessed valuation, (1) the City of DeRidder to issue (a) revenue bonds totalling $660,000 for the purpose of improving and extending the city’s waterworks system; (b) ad valorem tax bonds totalling $450,000 to construct sewers and sewerage disposal works, and (c) ad valorem tax bonds totalling $40,000 to purchase or construct fire department stations and equipment; and (2) the Sewerage District No. 1 of the City of DeRidder,[1] to issue ad valorem tax bonds totalling $350,000 for the construction of sewer and sewerage disposal works.
While the petition in the case is somewhat lengthy and inartistically drawn, the allegations thereof were fairly summarized by counsel in appellant’s brief as follows:[2]
“1. That voting was allowed at only one polling place in the entire area of the City of DeRidder when as a fact by law there are five precincts and polling places recognized by law within the area of the City of DeRidder, and that their action in naming only one polling place resulted in not giving the voters of the City of DeRidder a proper and legal chance to cast their ballot.[3]
“2. That only one group of commissioners was appointed by the city authorities and for only one polling place when as a fact there should have been five groups of commissioners for the said election.
“3. That sufficient illegal votes were cast to change the result of the election in that wives were allowed to vote one-half of their community property which was not assessed to them and when as a fact the law allows only the husband to vote community property.
“4. That the proper procedure as to casting the ballots was not followed in that each party was allowed to place his ballot in the box instead of folding it and passing it to one of the commissioners as required by law.
*70 “5. That the amounts purported to be voted did as a fact exceed the legal limit of indebtedness that the Constitution of the State of Louisiana allows a municipality to incur or more specifically that it exceeds 10 per cent of the assessed valuation of taxable property within the limits of the City of DeRidder.
“6. That the polls were allowed to remain open until eight o’olock in the evening when as a fact they are required by law to be closed at six o’clock.
“7. That unauthorized persons were allowed to seat themselves in the room where voting was held and to take a list of the persons voting and to question them as to their names as they entered when the law prevents such action within polling places upon election day.”
The trial judge, in a well considered opinion, while recognizing that the well pleaded facts must be accepted as true for purposes of disposing of the exception filed by the defendant city and district (Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257; Ane v. Ane, 225 La. 222, 72 So.2d 485; Amato v. Latter & Blum, Inc., 227 La. 537, 79 So.2d 873), concluded that whether the grounds on which the legality of the election are challenged are considered together or taken separately, the exception must be maintained under the well established jurisprudence to the effect that a special tax election will not be annulled for infor-malities or irregularities where fraud, corruption, and force are not charged and there are no allegations predicated upon particularized specifications of fact evidencing that, by reason of such informalities and irregularities, the people were deprived of votes sufficient in number and amount to have changed the result of the election. See, Bradford v. Grant Parish School Board, 154 La. 242, 97 So. 430; Heine v. Jefferson Davis Parish Police Jury, 172 La. 889, 135 So. 667; McCann v. Mayor and Councilmen, 173 La. 1063, 139 So. 481; Woulfe v. Morrison, 212 La. 1032, 34 So.2d 251; Blanchard v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70; Daigle v. Mayor and Board of Aldermen, 222 La. 556, 62 So.2d 833; Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403; Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, No. 44,006 on our docket, the decree in which was handed down March 20, 1958, with the written reasons therefor being released April 21, 1958, and the authorities therein cited. The underlying basis for this rule is the court’s reluctance to nullify the will of a majority of the people where all have had a free and unimpeded opportunity to express their wishes at the polls.
Counsel apparently recognizes the petition as drawn is fatally defective for he asks that we order the case remanded to permit him to amend it prior to trial on the merits to include the following facts he apparently feels are essential to state a cause of action: (1) The location of the five legal precincts within the city and the number of persons qualified to vote in a bond election in each precinct; (2) the fact that this identical proposition was defeated by popular vote in a recent election where more than one polling place was furnished for the convenience of the people; (3) the population, size, and area of DeRidder; (4) the number of people actually voting in the election; (5) to ascertain and list, if possible, the names of the married women who voted half of the community property and the amounts so voted; and (6) the assessed valuation of taxable property within the city as well as the total bonded indebtedness.[4]
*71 While the court frowns on loosely drawn pleadings, we are, as the trial judge so aptly observed, reluctant to maintain exceptions that have the effect of dismissing a suit without a hearing on the merits unless the reason for so doing is clear and unmistakable, particularly where, as here, bonds totalling a million and a half dollars are involved. Consequently, under our modern trend of disregarding technicalities of pleading, in the interest of justice, and to prevent a multiplicity of suits, we have shown great leniency in permitting the amendment of pleadings to insure the party has his day in court where it is obvious the petitioner has a cause of action but has merely failed to allege sufficient well pleaded facts to bring the petition within the rules of proper pleading. This leniency is accorded, however, only when the amended and supplemental petition does not assert a different and distinct cause of action from the relief originally sought, change the substance of the demand, and the right of opposing parties to answer the petition as amended is protected. See, Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488; Seale v. Stephens, 210 La. 1068, 29 So.2d 65; Sharp v. Sharp, 228 La. 89, 81 So.2d 820; Messersmith v. Mes-sersmith, 229 La. 495, 86 So.2d 169; Breaux v. Laird, 230 La. 221, 88 So.2d 33. See, also, Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, No. 44,006 on our docket.
To this end amendment of a petition has been permitted to show a cause of action after issue has been joined under Article 419 of the Code of Practice; after trial has begun (Seale v. Stephens, 210 La. 1068, 29 So.2d 65); after judgment on the exception but prior to the signing of the judgment (Drewett v. Carnahan, 186 La. 243, 172 So. 6; Lemoine v. Lacour, 213 La. 109, 34 So.2d 392); when requested for the first time in application for rehearing after judgment has been signed (Reagor v. First National Life Ins. Co., 212 La. 789, 33 So.2d 521), and when the supplement to the petition is filed for the first time several months after judgment on the exception has been signed. McCarthy v. Osborn, 223 La. 305, 65 So.2d 776. See, also, Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488, and the authorities therein cited. In each of these instances (with the exception of the Seale case, where we approved the remand ordered by the Court of Appeal), this court remanded the case to permit the amendment to be made. And although we have held that an amendment, to be valid, must conform to the same requirements to which the original petition is subjected, i. e., it must be in writing, verified, and served on opposing counsel (Sharp v. Sharp, 228 La. 89, 81 So.2d 820), where there was only an oral motion for amendment in the lower court, we approved the remand of the case for submission of the amendment after reduction to writing. Seale v. Stephens, 210 La. 1068, 29 So.2d 65; American Ins. Co. v. Mr. Fog, Inc., 228 La. 15, 81 So.2d 429.[5]
These rules, however, have heretofore been applied in ordinary litigations, where time was not of the essence. The instant case, involving as it does tax bond elections affecting the public fisc, must be settled with all possible speed to insure the uninterrupted operation of governmental functions necessary to meet the current needs of the people in the maintenance of health and order and the protection of property. Accordingly, the legislature has *72 limited the period within which the legality of such elections may be contested to 60 days. RS 39:518. And although the petitioner here waited until almost the end of that period to file his suit on October 24, 1957, which we feel afforded him ample time to investigate all phases of the election [6] for the purpose of discovering the facts counsel now considers necessary to remove his allegations from the category of conclusions of law, he not only failed to make such an investigation and discovery within this limited time, but also failed to amend his petition even after alerted to its defects by the filing of the exception of no cause of action on November 18, 1957. In fact, he has not, up until now, filed such an amended petition, asking in the lower court, and for the first time in brief to the judge after trial of the exception, only that he be permitted to file such an amendment. This is the request he renews here in brief, the case having been submitted for decision without oral argument.
If we were to grant the request, it is very likely the case would be tied up in court for another year, although by the time this decision becomes final it will be approximately a year since the tax election was held. Furthermore, from our appreciation of the matters counsel asks permission to include in a supplemental petition, the petition would still fall short of the ■essential allegations necessary under our jurisprudence to state a cause of action in a tax bond election contest. Consequently, we conclude the trial judge properly maintained the exception of no cause of action.
For the, reasons assigned, the judgment appealed from is affirmed.

. This district, the limits of which are co-extensive with those of DeRidder, was created by ordinance adopted July 8, 1957 (at the same meeting authorizing the calling of the special election), pursuant to the provisions of Section 14(c) of Article XIV of the Constitution of 1921 and RS 33:3961-4049.

. Several of the grounds on which the legality of the election were attacked have apparently been abandoned as they are not mentioned in this court, either orally or in brief.

. Although it was held in Sylvestre v. St. Landry Parish School Board, 164 La. 204, 113 So. 818, and again in Ludeau v. Ville Platte Gravity Drainage District, 164 La. 263, 113 So. 842, that the governing authority calling special tax elections has the right to name the polling places without regard to regular precinct lines, it would seem the legislature, though not in specific language, intended to overrule this jurisprudence by the adoption of Act No. 277 of 1940, where the phrase “polling place” was changed to read “polling precinct.” However, the adoption of the Revised Statutes in 1950 finds the former language (polling place) reinstated. RS 39:504. While we must, therefore, recognize this to be the law in the light of the former interpretation placed thereon in the jurisprudence, we take it to mean that the governing authority, fully cognizant of the requirements for properly conducting such an election, will provide polling places ade *70 quate in number and equipment to facilitate the casting of ballots by all desiring to vote.

. In brief counsel asserts these are the same grounds urged as a basis for his request in the trial court that he be permitted to amend the petition. As an added ground he desires, also, to allege that inasmuch as the city by the creation of *71 the sewerage district transferred to this new political subdivision all matters relating to sewers and sewerage, the city was, thereafter, without right or power to issue the $450,000 of ad valorem tax bonds for the construction of sewers and sewerage.

. It should be noted that in the Fog case the oral motion for amendment was apparently made at the time the exception was tried, and was then disallowed by the trial judge. However, after trial a written amendment was submitted, the judge refusing to sign the order making it a part of the pleadings.

. It should be observed this is a much longer period of time than that allowed for the contest of an election of public officials, where the contestant must institute his suit within 2 days from the promulgation of the results. RS 18:364. See, Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, No. 44,006 on our docket. Furthermore, the Dowling case is easily distinguishable on other grounds. The petition there stated a cause of action and the amendment was merely a further particularization and amplification of the original allegations where specific fraud was alleged (and proved), and was held to be admissible for the purpose of showing a system and indicating the extent of the fraud. Furthermore, the amendment was offered within a few days after the original petition was filed.