HOOD, Judge.
This is an action to contest the second primary election held by the Democratic Party on December 18, 1971, insofar as it purported to select the party’s nominee for the office of Representative of District 48, of the State of Louisiana. The suit was instituted by Rex J. Champagne against E. Ackal, Jr., and the Iberia Parish Democratic Executive Committee. It was later dismissed as to the Executive Committee, leaving Ackal as the sole defendant.
Plaintiff demands: (1) That a recount of all absentee ballots be ordered; and (2) that all of the votes cast in one precinct be disregarded, or alternatively, that the commissioners’ tabulation sheet which was delivered to the Clerk of Court be accepted as the correct tabulation of votes cast in that precinct.
A recount of the absentee ballots was held as prayed for, and all parties concede that the figures compiled in that recount did not change the results of the election. No issue is raised here, therefore, as to the recount.
Defendant Ackal filed several exceptions, including an exception of no right or cause of action, and an answer. A hearing was held on the exceptions, and the case also was tried on its merits. Judgment then was rendered by the trial court sustaining the exception of no right or cause of action filed by defendant, and dismissing the suit. Plaintiff appealed.
Defendant answered the appeal, demanding principally that he be awarded attorney’s fees and damages for a frivolous appeal.
The principle issues presented are: (1) Whether the failure of the commissioners to certify the numbers on the seals which were used in sealing the voting machines in one precinct, after the closing of the polls, renders the votes cast in that precinct null and void; and (2) whether the commissioners’ tabulation sheet which was filed with the Clerk of Court, showing that 109 votes were cast for defendant on one voting machine, should be accepted as the correct tabulation of votes cast on that machine, in preference to reports of 149 votes cast for him on that machine, as shown on other tabulation sheets.
Plaintiff Champagne and defendant Ackal were candidates for election as the party’s nominee for Representative in the Democratic Party second primary election held on December 18, 1971, in Representative District 48. Located in that district is Precinct 68, Ward 5, of Iberia Parish. Two voting machines were used in that precinct on the date of the election.
Plaintiff concedes that no irregularities occurred prior to the closing of the polls that day. There is a dispute as to whether the commissioners sealed the voting machines in the above mentioned precinct after the polls were closed and the machines had been locked. We conclude, however, *485 that the machines were properly sealed as required by LSA-R.S. 18:1190(D). After the results of the election had been tabulated by the commissioners, they delivered to the Clerk of Court the Tabulation Sheets, as required by Section 1190(D), and the Machine Certificate, which is required by Section 1190(A). In the Machine Certificate, the commissioners gave all of the information required by Section 1190(A), except that they failed to give “the number on the seal” which was used in sealing each of the two voting machines.
Plaintiff contends that Section 1190(A) makes it the mandatory duty of the commissioners to record on the Machine Certificate the number on the seal which was used in sealing each voting machine, and that the failure of the commissioners to record those numbers on that certificate renders the votes cast in that precinct null and void.
LSA-R.S. 18:1190(A) provides that the commissioners shall lock the machines at the official time for closing the polls, and that:
“They shall, at the same time, sign a certificate stating that the machines were locked and sealed, giving the exact time; .... and giving the number on the seal and the number registered on the protective counters.”
Plaintiff argues that the word “shall” must be interpreted as making it mandatory for the commissioners to give the numbers of the seals on the certificate, and that the failure of the commissioners to record that information on the Machine Certificate renders the votes recorded by each such machine null and void. Although he does not contend that any fraud was actually committed, he takes the position that the requirement in the statute was made mandatory to remove opportunities for fraud in elections, and that these provisions should be enforced as should all other mandatory requirements.
The word “shall” appears more than 20 times in LSA-R.S. 18:1190. Where the statute provides that commissioners “shall” perform a certain duty, we think the requirement is mandatory in the sense that the commissioners are allowed no discretion in determining whether that duty shall be performed. We do not believe, however, that the legislature intended that the failure of the commissioners to perform any one of the many duties required of them should have the effect of annulling the entire election or of disfranchising all of the voters in a geographical area. The statute provides, for instance, that the commissioners “shall again proclaim in a loud and audible voice the results of the election as recorded.” (LSA-R.S. 18:1190(D).) We do not feel that the failure of the commissioners to perform that duty, although it is required by the word “shall,” would have the effect of voiding all votes cast in that precinct.
In Heine v. Jefferson Davis Parish Police Jury, 172 La. 889, 135 So. 667 (1931), cited by plaintiff, there was a failure to follow two provisions of Act 256 of 1910 (under which the election was held), both of which were required by the use of the word “shall.” In spite of these failures the validity of the election was upheld.
In Constantin v. McNeely, 141 So.2d 684 (La.App. 3 Cir. 1962), also relied on by plaintiff, we held that some of the requirements of LSA-R.S. 18:1193 are mandatory, but we did not annul the election because of the failure of the Parish Custodian to observe those requirements. We merely held that the tabulation of votes made by the commissioners should be accepted in preference to the tabulation made by the Clerk of Court, despite the provisions of LSA-R.S. 18:1193, because of irregularities which occurred in the clerk’s office in breaking the seals and opening the voting machines.
The general rule is that where the electors have had a fair and free opportu *486 nity to express their will at the polls, and have done so, the result of their choice will not be set aside because of the failure of a ministerial officer to perform some duty imposed upon him by law. Vidrine v. Eldred, 153 La. 779, 96 So. 566 (1923); Andrews v. Blackman, 131 La. 355, 59 So. 769 (1912); Womack v. Nettles, 155 La. 359, 99 So. 290 (1924); Burch v. McClendon, 123 So.2d 640 (La.App. 1 Cir. 1960).
In Andrews v. Blackman, supra, our supreme court said:
“The parties concerned in a primary election, as in any other, are the community to be affected, the electors who participate, and the candidates. The officers charged with its conduct are merely agents, whose duty it is to facilitate the electors in the free and fair expression of their will, and where that has been accomplished it would be unreasonable to hold, in the absence of an express provision of law to that effect, that the interest of the community shall be sacrificed, the will of the electors set at naught, and the results, as to the candidates, defeated, because, in its accomplishment, or after its accomplishment, the agents under whose direction the election had been held, have failed to follow each and every formal direction prescribed for their guidance.”
The same court in Womack v. Nettles, supra, stated:
“It is a principle underlying all law and jurisprudence in matters of election by the people that an election will not be set aside for mere irregularities and illegalities, nor for negligence and improper conduct of the election officers, unless it is shown that a sufficient number of voters were deprived of their votes to have changed the result.
“Nor will an election be set aside, notwithstanding the misconduct of election officers, where the voters have had free and fair opportunity to express their will and have done so in a legal manner.” (Citations omitted).
In the instant suit we conclude that the failure of the commissioners to list on the Machine Certificate the numbers on the seals which were affixed to the voting machines was not such an irregularity as to void all of the votes cast in that precinct. To hold otherwise would have the effect of disfranchising the voters in that precinct and preventing a free and honest expression of the will of the voters.
Plaintiff contends, alternatively, that the tabulation sheet which the commissioners delivered to the Clerk of Court following the closing of the polls should be accepted as the correct tabulation of votes cast in Precinct 68, rather than the tabulation shown on all other reports submitted by the commissioners and the tabulation made by the Clerk of Court three days later, pursuant to LSA-R.S. 18:1193.
There were five commissioners at Precinct 68, Ward 5, Iberia Parish, for this election. After the polls were closed these commissioners completed and signed a total of eight tabulation sheets showing the results of the election. Five of these sheets were filed in evidence. One of them showed that 109 votes were cast for defendant Ackal on one voting machine, while all of the other tabulation sheets prepared by the commissioners and which are in the record showed that he received, 149 votes on that machine. The trial judge held, and we agree, that Ackal actually received 149 votes on that particular machine, and that the commissioner who filled out the incorrect tabulation sheet simply erred in showing on it that Ackal received only 109 votes.
One of the commissioners, Mrs. Florentine Sinitiere, was selected by the others as the returning officer, with the responsibility of returning to the Clerk of Court after the closing of the polls the paraphernalia used by them in conducting the election, including the commissioners’ keys, a tabulation sheet showing the votes cast for *487 each candidate in that precinct, and a machine certificate.
After the polls were closed, Mrs. Sini-tiere carried the keys, the Machine Certificate, and one of the commissioners’ tabulation sheets to the Clerk of Court. The one which she took to the clerk’s office, by chance, happened to be the one which incorrectly showed that Ackal received only 109 votes instead of 149 votes on one machine. She also carried to the clerk’s office at the same time the other copies of the commissioners’ tabulation sheets, with stamped envelopes addressed to the various officers who were to receive these copies. The clerk then proceeded to mail or to deliver the other copies of the tabulation sheets to the officers to whom they were addressed.
On the third day after the election, the Clerk of Court opened the machines and transcribed the totals for each candidate as they appeared on the voting machines, and he recorded the number of absentee and military votes cast for each candidate, all as required by LSA-R.S. 18:1193. In doing so, the clerk discovered the error in the incorrect tabulation sheet which had been delivered to him by the commissioners, and he proceeded to correct that error in red ink on the tabulation sheet to show the proper figures.
Plaintiff does not argue that the commissioners’ tabulation sheet which was delivered to the Clerk of Court is correct. He takes the position, however, that whether it is correct or not the court is bound to accept it as showing the number of votes which were cast for each candidate in that precinct, because none of the other tabulation sheets can be considered due to irregularities in conducting the election.
One such irregularity urged by plaintiff is that the correct tabulation sheets “were not forwarded to the proper public official by mail on the night of the election as required by LSA-R.S. 18:1190.” We find no such requirement in the cited section of the Revised Statutes. The evidence shows that the reports were mailed or delivered to the proper officers by the Clerk of Court, and we think that constituted an adequate compliance with the statute.
Another irregularity claimed by plaintiff is that “the mandatory requirements for the closing of the voting machines were not complied with.” We have found that no irregularity occurred in the closing of those machines. Even if some such irregularity did occur, however, we do not feel that it would compel the court to accept the tabulation, sheet which was filed with the clerk in preference to the ones which were sent to other officers or in preference to the totals found and reported by the clerk.
The law indicates that the tabulation made by the Clerk of Court should prevail over the commissioners’ tabulation sheet which is filed with the clerk. LSA-R.S. 18:1190(E), for instance, provides that the copy of the commissioners’ tabulation sheet which is delivered to the clerk is “for’use of the press and public.”
LSA-R.S. 18:1193 provides that the Clerk of Court, as the Parish Custodian, shall break the seals and open the voting machines on the third day after the election, and that he shall transcribe the totals for each candidate as they appear on the machines and shall record the number of absentee and military votes cast for each candidate. It also provides that “these totals so transcribed by the parish custodian shall become legal evidence of the number of votes cast for each candidate in said election, and accepted as such in any contest suit which may arise.”
In view of these statutory provisions, we find that the trial judge did not err in considering the totals reported by the Clerk of Court when the machines were opened on the third day after the election.
*488 We conclude that there is no merit to plaintiff’s argument that we must accept the figures shown on the commissioners’ tabulation sheet which was filed with the Clerk of Court.
Several other irregularities are claimed by plaintiff as a basis for his demands. Among these are assertions that the commissioners failed to lock the machines immediately after the polls were closed, that they failed to state in the Machine Certificate the exact time when the machine was locked, that they failed to again verify the tabulation of votes as required by LSA-R. S. 18¡1190(B), and that they failed to obtain a receipt from the Parish Custodian for the envelopes containing the keys to the voting machines.
We have found that the machine was timely locked following the closing of the polls, and we feel that none of the other irregularities, assuming that they occurred, are sufficient to warrant a judgment changing the promulgated results of the election.
Our ultimate conclusion is that the tabulation made by the Clerk of Court is correct, and that plaintiff is not entitled to the relief which he seeks. The trial court sustained the exception of no right or cause of action which was filed by defendant. We arrive at the same result as did that court, but we think judgment should be rendered on the merits rejecting plaintiff’s demands and dismissing the suit at his costs.
Defendant-appellee has answered the appeal seeking damages for a frivolous appeal. Damages for a frivolous appeal will not be allowed, unless it is manifest that the appeal was taken solely for the purposes of delay, or that counsel does not sincerely believe in the view of the law he advocates. There is nothing here to indicate that this appeal was taken solely for the purpose of delay, and we feel that counsel sincerely believes in the view of the law he advocates. The demands contained in the answer to the appeal thus are rejected.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.